UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 4:19-CR-231-1 |
| | ) | |
| | ) | (BRANN, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| HORACE HENRY, | ) | |
| Defendant | ) | |

MEMORANDUM FOR COVID-19 BAIL DECISION
Defendant Henry's Motion for Bail, Doc. 82

## I.  INTRODUCTION

Before the Court is Mr. Henry's Motion for Bail (Doc. 82). Along with the Motion, a Brief (Doc. 83), the required notice (Doc. 84) requesting a hearing, the Government's Brief in Opposition (Doc. 86), and Mr. Henry's Reply Brief (Doc. 87) were filed. A hearing was held regarding this Motion on June 3, 2020. Mr. Henry alleges two grounds for release in his Motion: (1) because there is not a presumption of detention in Mr. Henry's case, the Government must demonstrate that Mr. Henry is a risk of flight; and (2) exceptional risk due to the COVID-19 pandemic.[1] For the reasons detailed in this Memorandum, the request for release from detention will be denied.

---

[1] Mr. Henry initially included a third argument that it was impossible for him to meet with his attorney to effectively prepare for trial. At the June 3, 2020 hearing, Mr. Henry sought to withdraw this portion of the Motion. The Government had no objection. I deferred ruling on the verbal motion until after the evidence was presented. I will permit Mr. Henry to withdraw this portion of his Motion for Bail.

## II.    BACKGROUND & PROCEDURAL HISTORY

This case began with the indictment of three individuals, including Horace Henry. (Doc. 3). Mr. Henry had his Initial Appearance and Arraignment on August 22, 2019. (Doc. 19). At that time, Defendant did not contest detention. (Doc. 23).

On August 30, 2019, Judge Brann issued a Scheduling Order (Doc. 25) which scheduled, among other things, jury selection and trial for October 7, 2019. After Judge Brann granted five (5) Motions to Continue (Docs. 24, 27, 43, 57, 80), jury selection and trial were scheduled for July 6, 2020.

On September 26, 2020, a Superseding Indictment (Doc. 35) was filed as to the defendants, including Mr. Henry. Mr. Henry's Initial Appearance and Arraignment as to the Superseding Indictment was held on October 8, 2019. (Doc. 46).

On April 30, 2020, Mr. Henry filed a Motion for Pretrial Release (Doc. 82) and a Brief in Support (Doc. 83), citing COVID-19 concerns. That same day, I issued an order instructing the parties to confer by telephone to determine if a joint resolution could be reached. On May 1, 2020, Mr. Henry filed Notice (Doc. 84) that a joint resolution could not be reached regarding his pretrial detention. Mr. Henry also requested an in-court hearing. On May 13, 2020, the Government filed its Brief in Opposition (Doc. 86). On May 15, 2020, Mr. Henry filed his Reply Brief (Doc. 87). On June 3, 2020, I held a hearing regarding Mr. Henry's Motion.

### III. COURT PROCEDURE FOR COVID-19 CASES

Anticipating a significant number of requests for reconsideration of bail in light of the COVID-19 pandemic, the Court instituted an expedited procedure to hear these cases in an orderly and deliberate fashion. The filing of a bail motion citing COVID-19 as a reason for release from detention will be specifically designated and a docket entry will automatically notify counsel about the expedited procedures. That entry was made in this case on April 30, 2020.

### IV. STANDARDS OF REVIEW

The Court has continuing jurisdiction to review its own bail decisions. In this case the request for reconsideration regarding bail is made under 28 U.S.C. § 3141, which is the general release and detention authority of the Court, and 28 U.S.C. § 3142(i) which states:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142.

The question presented by this Motion requires an analysis of the Bail Reform Act under pandemic conditions. Does this petition present a "compelling reason" to alter a previous bail decision?

## V. REVIEW OF PREVIOUS BAIL DECISION

On August 22, 2019, I issued an Order of Detention (Doc. 23). In that Order, I indicated that Mr. Henry was being detained upon a motion by the Government pursuant to 18 U.S.C. § 3142(f)(1).

## VI. FLIGHT RISK

At the outset, I note that per the original Order of Detention, Mr. Henry is detained pursuant to 18 U.S.C. § 3142(f)(1). However, Mr. Henry is not charged with an offense that is covered in subsection (f)(1)(A)-(E). Mr. Henry argues that the Court's "only option is to set conditions of release that will eliminate or minimize concerns about safety of the public and appearing in court." (Doc. 83, pp. 3-4). I agree. In the original Order of Detention (Doc. 23), I indicated that Mr. Henry was being detained pursuant to 18 U.S.C. § 3142(f)(1). Section 3142(f)(1) provides a list of charged offenses in which a presumption of detention exists. This list includes the following:

> (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (B) an offense for which the maximum sentence is life imprisonment or death;
>
> (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Act (21 U.S.C. 951 et seq.), or chapter 705 of titled 46;

(D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code;

18 U.S.C. § 3142(f)(1)(A)-(E).

Mr. Henry is not charged with any of the offenses listed under Section 3142(f)(1). Thus, a determination that Mr. Henry is a "serious risk" of flight is required to order him detained pending trial. *See* 18 U.S.C. § 3142(f)(2).

At the June 3, 2020 hearing, the Government argued that Mr. Henry is a flight risk. As support for this argument, the Government noted Mr. Henry's foreign ties, immigration status, criminal history (particularly while on supervision), previous instances where he failed to appear, and use of aliases and fake identification documents (particularly to law enforcement).

Mr. Henry argued that his previous criminal history, particularly his failure to appear on at least two occasions, was due to his prior struggles with drug addiction and temporary homelessness. Mr. Henry stated that he no longer has a drug addiction and has not used drugs for many years. Mr. Henry expressed a desire to be with his

fiancée and two children. Further, Mr. Henry stated that he has no desire to leave the county or flee, because his "whole life" is in New York, not Jamaica.

Mr. Henry also testified that there is a warrant for his arrest in New York. He claimed it was due to a mistake but admitted that he has not taken any action to resolve this issue. This scofflaw attitude is inconsistent with his argument that he is willing to comply with the Court's conditions of release.

At the hearing, there was inconsistent testimony regarding where Mr. Henry was living at the time of his arrest. Mr. Henry testified that at the time of his arrest, he was living alone in an apartment in Brooklyn, New York. However, his fiancée testified that at the time of Mr. Henry's arrest, he was living with her.

I find the Government's argument regarding risk of flight to be compelling. I am sympathetic to Mr. Henry's struggle with drug addiction and its alleged contribution to his failure to comply with previous court orders. However, Mr. Henry has demonstrated a history of failing to act in accordance with court orders to appear. Further, after he was deported from the United States, Mr. Henry ultimately re-entered the country illegally and has remained here ever since. If convicted, Mr. Henry faces a substantial term of imprisonment. He faces a maximum term of imprisonment of twenty (20) years on the mail fraud and conspiracy counts and mandatory sentence of two (2) years on each of the aggravated identity theft counts.

For these reasons, I conclude that Mr. Henry is a risk of flight and that detention pursuant to 18 U.S.C. § 3142(f)(2) is appropriate.

VII.   DISCUSSION OF THE COVID-19 PANDEMIC

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[2] We are also cognizant that the President of the United States has declared a national emergency and that the Governor of the Commonwealth of Pennsylvania[3] has also declared a state of emergency to address the needs of the nation and the Commonwealth respectively. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and

---

[2] World Health Organization, "WHO characterized COVID-19 as a pandemic" March 25, 2020, available at https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen

[3] Governor Thomas Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa.C.S. §7301(c) on March 6, 2020. He ordered all non-essential business in the Commonwealth to close on March 20, 2020, and he extended the closure of non-essential businesses and schools "indefinitely" to slow the progression of the pandemic. "Gov. Wolf and Sec. of Health Expand 'Stay at Home' Order to Carbon, Cumberland, Dauphin and Schuylkill Counties, Extend School Closures Indefinitely," March 30, 2020, available at https://www.governor.pa.gov/newsroom/gov-wolf-and-sec-of-health-expand-stay-at-home-order-to-carbon-cumberland-dauphin-and-schuylkill-counties-extend-school-closures-indefinitely/. That Stay at Home Order was extended to all 67 counties on April 2, 2020 to be effective thru April 30, 2020. https://www.pa.gov/guides/responding-to-covid-19/#StayatHomeOrder (last accessed April 4, 2020).

to avoid close contact with others—all of which presents challenges in detention facilities. *See United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857 *2 (D. Md. Mar. 17, 2020). As of June 3, 2020, 166 cases have been issued around the country citing *Martin*. Of the cases that cite *United States v. Martin,* most of the decisions were to detain the defendant. In *United States v. Davis*, the judge denied the government motion for pretrial detention because the detention facility already had cases of COVID-19 and the individual was not a flight risk and posed no serious threat to the community. *United States v. Davis*, No. ELH-20-09, 2020 WL 1529158 (D.Md. Mar. 30, 2020). The case also relied heavily on expert opinion that pretrial facilities are poorly equipped to manage the highly contagious and potentially deadly coronavirus. *Id.* A majority of the cases that granted temporary release were people detained due to immigration proceedings. *See e.g.*, *Basank v. Decker*, No. 20-cv-2518 AT, 2020 WL 1481503, (S.D.N.Y. Mar. 26, 2020) and *Coronel, et al. v. Decker, et al.*, No. 20-cv-2472 AJN, 2020 WL 1487274 (S.D. N.Y. Mar. 27, 2020). Additionally, there was one case that only granted review of bail hearings to be assessed on a case to case basis. See *Karr v. State*, No. 4FA-19-00872CR, 2020 WL 1456469 (Alaska Ct. App. Mar. 24, 2020).

In a precedential opinion analyzing a COVID-19 release request in the context of the compassionate release provisions of the First Step Act, the Third Circuit

concluded that COVID-19 risk alone does not require release where the prison system has a plan in place to deal with the pandemic.

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*U.S. v. Raia,* 20-1033, slip op. at 8 (3d Cir. April 2, 2020)

On March 31, 2020, Judge Jones of this Court ordered the immediate release of fourteen men and women held in ICE civil detention in Pike, Clinton and York County facilities. According to Judge Jones, "Each of the petitioners suffers from chronic medical conditions and faces an imminent risk of death or serious injury if exposed to Covid-19." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 2 (M.D. Pa. March

31, 2020). Ruling on their habeas "conditions of confinement" petitions[4] he found that "…a remedy for unsafe conditions need not await a tragic event." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 6 (M.D. Pa. March 31, 2020). His review of the safety procedures at these three immigration facilities found they were insufficient to overcome the speculative risk of infection and death for an "imminent irreparable harm" finding in the TRO context.

> The Petitioners' claim is rooted in imminent, irreparable harm. Petitioners face the inexorable progression of a global pandemic creeping across our nation—a pandemic to which they are particularly vulnerable due to age and underlying medical conditions. At this point, it is not a matter of *if* COVID-19 will enter Pennsylvania prisons, but *when* it is finally detected therein. It is not unlikely that COVID-19 is already present in some county prisons—we have before us declarations that portions of the Facilities have been put under ineffective quarantines due to the presence of symptoms similar to COVID-19 among the inmate population. Indeed, we also have reports that a correctional officer at Pike has already tested positive for COVID-19. (footnotes omitted).
>
> . . . .
>
> Based upon the nature of the virus, the allegations of current conditions in the prisons, and Petitioners' specific medical concerns, detailed below, we therefore find that Petitioners face a very real risk of serious, lasting illness or death. There can be no injury more irreparable.

*Thakker v. Doll*, 1:20-cv-0480, slip op. at 8,9 (M.D. Pa. March 31, 2020).

---

[4] Petitioners invoked the jurisdiction of the Court under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 28 U.S.C. § 2241 (habeas jurisdiction), and Article I, Section 9, clause 2 of the United States Constitution (the Suspension Clause) (Doc. 1, p. 6).

Judge Jones cites several immigration detention cases where release has been ordered. *Thakker v. Doll*, 1:20-cv-0480, slip op. at 18-20 (M.D. Pa. March 31, 2020. He balanced the public interest in continued detention this way: "Finally, the public interest favors Petitioners' release. As mentioned, Petitioners are being detained for civil violations of this country's immigration laws." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 23 (M.D. Pa. March 31, 2020).

In concluding that immediate release was required in these fourteen cases Judge Jones said:

> In times such as these, we must acknowledge that the *status quo* of a mere few weeks ago no longer applies. Our world has been altered with lightning speed, and the results are both unprecedented and ghastly. We now face a global pandemic in which the actions of each individual can have a drastic impact on an entire community. The choices we now make must reflect this new reality.
>
> Respondents' Facilities are plainly not equipped to protect Petitioners from a potentially fatal exposure to COVID-19. While this deficiency is neither intentional nor malicious, should we fail to afford relief to Petitioners we will be a party to an unconscionable and possibly barbaric result. Our Constitution and laws apply equally to the most vulnerable among us, particularly when matters of public health are at issue. This is true even for those who have lost a measure of their freedom. If we are to remain the civilized society we hold ourselves out to be, it would be heartless and inhumane not to recognize Petitioners' plight.

*Thakker v. Doll*, 1:20-cv-0480, slip op. at 24 (M.D. Pa. March 31, 2020).

The language of this case is strong and persuasive in the civil detention context.[5] However, to apply this reasoning to prisons and jails across the board in all criminal cases is a much different matter. Different interests must be balanced when a criminal defendant has been detained only after a finding that no condition or combination of conditions will assure the presence of the defendant and the safety of the community. The balancing is likewise different when a criminal defendant is serving a sentence. The question of civil detention, early parole or compassionate release is not before me. This is a decision about bail during a pandemic.

I agree with the courts that have held that a defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 *3 (D. Kan., Mar. 25, 2020). While the court remains sympathetic to the generalized risk regarding the possible complications caused by the COVID-19 virus "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859 *3 (W.D. Pa. Mar. 30, 2020).

---

[5] The Government appealed Judge Jones's decision to the Third Circuit and requested an administrative temporary stay. The Third Circuit granted the temporary stay request within hours. On April 21, 2020, the Third Circuit issued an Opinion concluding that it has jurisdiction to hear the Government's appeal of Judge Jones's decision. The Third Circuit will address the merits of the Government's appeal after the parties have had the opportunity to brief the issues. *See Hope v. Warden York County Prison*, No. 20-1784, 2020 WL 1922372 (3d Cir. Apr. 21, 2020).

I believe I must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i).

VIII. **COVID-19 BAIL FACTORS BEYOND STANDARD CONSIDERATIONS**

Mr. Henry alleges that he should be released pretrial due to the ongoing COVID-19 pandemic.

A. SPECIFIC HEALTH RISKS

Mr. Henry does not argue that exceptional circumstances exist related to COVID-19 that warrant pretrial release.[6] Mr. Henry does not allege that specific health concerns or conditions of Columbia County Prison warrant pretrial release.

B. SPECIFIC CONDITIONS IN THE PLACE OF DETENTION

Further, it does not appear that there is anything before this Court to indicate any specific problem has developed at Columbia County Prison. On March 23, 2020, Chief Judge Christopher C. Conner issued Standing Order No. 20-5. This Standing Order states:

> [E]ach detention center shall promptly notify the Marshal for this District of any federal detainee who is in medical isolation or quarantine at their facility for any reason, promptly upon the entry of such detainee

---

[6] Mr. Henry cited to COVID-19 as severely preventing his ability to prepare for trial. (Doc. 83, pp. 4-5). However, that portion of the Motion for Bail has been withdrawn.

into such status. The Marshal shall then so notify the undersigned and the judicial officer who entered the Order of commitment of such status.

As of the filing of this Opinion, no notice has been received from Columbia County Prison that Mr. Henry is in medical isolation or quarantine for any reason. According to the Marshal for this District, as of June 2, 2020, there has been one (1) case of COVID-19 at Columbia County Prison. This positive result was a prison staff member. This infected staff member has recovered and has been medically cleared to return to work. There have not been any other cases of COVID-19 amongst prison staff or detainees.

### C. NUMBER OF CONFIRMED CASES

In all of Columbia County, where the prison is located, there are three hundred and forty-nine (349) cases and thirty-one (31) deaths as of June 3, 2020. Mr. Henry requests release to his home in Brooklyn, New York. In Brooklyn Borough, there are two thousand one hundred and fifty-seven (2,157) cases and one hundred and ninety-nine (199) deaths, as of June 3, 2020.

### D. RELEASE PLAN

Mr. Henry seeks release to his fiancée and children. Mr. Henry alleges that he and his third-party custodian are willing to comply with any and conditions imposed by the Court. I conclude that Mr. Henry has failed to demonstrate that due to risks caused by the COVID-19 pandemic, he should be released pretrial.

## IX. CONCLUSION

For all of the reasons set forth above, Mr. Henry has failed to show that that pretrial release is appropriate at this time. Regarding both risk of flight and exceptional risk from COVID-19, his Motion for Bail will be denied. An appropriate order shall follow.

Date: June 4, 2020                                   BY THE COURT

*s/William Arbuckle*
William Arbuckle
U.S. Magistrate Judge
